## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ALEXANDER LEVENE<br>and DAVID HUSMAN,<br><br>Plaintiffs,<br><br>V.<br><br>STAPLES OIL CO., INC., and<br>ALBERTUS SCHELHAAS,<br><br>Defendants. | § § § § § § § § § § § | CASE NO. 20:4171-KES<br><br>Judge Karen E. Schreier |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, by and through counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(B), submit their response to Defendants' Statement of Material Facts [Doc. No. 32] as to which they contend there is no genuine issue for trial:[1]

**Plaintiffs' Deposition Testimony**

1. This case arises out of a motor vehicle accident that occurred on December 27, 2018 on I-90 in Minnehaha County, South Dakota. *See* Compl. at ¶¶ 18, 27; *see also* Affidavit of Brandon D. Meshbesher in Support of Defendants' Motion for Summary Judgment [hereinafter "Mesh. Aff."], Ex. 1 at 64:18–65:1.

**RESPONSE: Undisputed.**

2. At the time of the accident, Plaintiff Alexander Levene ("Levene") was within the course and scope of his employment and was operating a Ford F150 owned by his employer

---

[1] Any admissions contained herein are for purposes of summary judgment only.

("Plaintiffs' Vehicle"). *Id.* at 65:10-12, 66:17-22.

**RESPONSE: Undisputed.**

3.      Plaintiff David Husman ("Husman") was a passenger in Plaintiffs' Vehicle and was working on the same project as Levene. Mesh. Aff., Ex. 2 at 47.

**RESPONSE: Undisputed.**

4.      The project Plaintiffs were working on was located at a rest area near the South Dakota/Minnesota border. *See* Mesh. Aff., Ex. 1 at 65:2-12.

**RESPONSE: Admitted that Plaintiffs were working on a job at a rest area near the South Dakota / Minnesota border.**

5.      Two other employees were working with Levene and Husman on the day of accident and were travelling in a separate vehicle behind the vehicle owned and operated by Defendants. *See* Mesh. Aff., Ex. 1 at 61:15–62:7; Mesh. Aff., Ex. 2 at 47:9–48:3.

**RESPONSE: Admitted that two other co-workers were traveling at some unknown distance behind Defendants' tractor-trailer at the time of the crash. *See* Doc. No. 34-2 at 48:3.**

6.      Levene, Husman, and their fellow employees stopped work early due to incoming winter storms. *See* Mesh. Aff., Ex. 1 at 65:13-19; Mesh. Aff., Ex. 2 at 48:19-24.

**RESPONSE: Admitted that Plaintiffs and their fellow employees stopped work early due to worsening winter weather conditions. Disputed as to the characterization that the winter storms were "incoming". *See* Doc. No. 34-1 at 65:13-15 (confirming weather was "kind of bad"); Doc. No. 34-2 at 48:23 ("It was getting bad enough that we – they called it, so we were going to head in before it got too bad."); *Id.* at 54:18-23 (testifying that the conditions were "basically the**

2

same" from the time they left the rest area to the crash scene).

7.      Levene drove from the rest area where the work was being performed, got on the interstate, and noticed that the weather and road conditions began to deteriorate as he was travelling west toward Brandon, South Dakota. *See* Mesh. Aff., Ex. 1 at 67:22– 68:24.

**RESPONSE: As outlined in the Response to No. 6, disputed as to the characterization that "road conditions <u>began</u> to deteriorate". Plaintiff Levene was operating a Ford F150, not a tractor-trailer. Upon noticing the "weather conditions, road conditions were getting worse," he "start[ed] slowing down more and more" coming to a complete stop when he came upon a crash. *See* Doc. No. 34-1 at 68:12-17.**

8.      Husman agreed that conditions at the time Levene started driving included slush, snow, sleet and "a little bit of everything." Mesh. Aff., Ex. 2 at 49:24–50:7.

**RESPONSE: Undisputed.**

9.      Husman testified that he thought they should have left earlier because the road conditions were becoming dangerous. *Id.* at 54:2-5.

**RESPONSE: Disputed as to the characterization that the "road conditions <u>were</u> becoming dangerous". Plaintiff Husman testified, "the road conditions <u>are</u> dangerous," adding "the slushy and the snowy and the icy, and you don't know where black ice is." *See* Doc. No. 34-2 at 54:2-5.**

10.     Levene testified that the road conditions continued to deteriorate during the drive, causing him to slow down more and more as he continued down the interstate. Mesh. Aff., Ex. 1 at 68:14-17.

**RESPONSE: Undisputed (as clarified in response to No. 7).**

11.     Levene estimated he was travelling between 40 and 80 miles per hour shortly before the accident. *Id.* at 70:13-20.

**RESPONSE: Disputed as to the characterization of the speed, and this was his speed "shortly before the [crash]." Defense counsel's questioning focused on the entire trip – from the rest area to the crash scene – not only the moments before the crash. *See* Doc. No. 34-1 at 68:5-70:20. Plaintiff Levene testified "[he] was already at a reduced speed" below "70, 75, 80 [mph]" when he first entered the interstate. *Id.* at 68:5-10. From there, he slowed his speed even further. *Id.* at 70:7-9. Furthermore, Plaintiff Levene was not operating a tractor-trailer.**

12.     Levene testified that the other vehicles on the roadway at the time were all travelling at different speeds—with some vehicles traveling at or above the speed limit and passing him, and others matching his speed and staying behind him. *Id.* at 69:11-16.

**RESPONSE: Undisputed.**

13.     Levene testified that he observed slowed and stopped traffic due to a single vehicle spin-out on a bridge approximately a quarter mile to the east of Brandon, South Dakota. *Id.* at 71:8–72:4.

**RESPONSE: Undisputed.**

14.     Levene slowed and eventually stopped in the roadway with between five and fifteen other stopped cars between Plaintiffs' Vehicle and the vehicle that blocking traffic on the bridge. *Id.* at 72:5-13; *see also* Mesh. Aff., Ex. 2 at 52:6-10.

**RESPONSE: Disputed as to the accuracy of the range. Plaintiff Levene, the operator of the F150, testified "[t]here was about five cars ahead of me." *See* Doc. No. 34-1 at 71:18. Plaintiff Husman was unsure, testifying "[i]t was a ways – 15,**

**maybe. I don't know. I never counted them."** *See* **Doc. No. 34-2 at 52:8-10.**

15.     Husman testified that Plaintiffs' Vehicle came to a stop on a downhill slope. Mesh. Aff., Ex. 2 at 50:19–52:5.

**RESPONSE: Undisputed.**

16.     According to Husman, the vehicle and stopped traffic at the bridge only became visible as Plaintiffs' Vehicle "topped the hill" to the east of the accident scene. *Id.* at 54:24–55:4.

**RESPONSE: Undisputed.**

17.     Levene and Husman both testified that they heard the driver of Defendants' Vehicle sound his horn before the impact. *See* Mesh. Aff., Ex. 1 at 73:1-6; Mesh. Aff., Ex. 2 at 57:19-22.

**RESPONSE: Undisputed.**

18.     Levene was able to look up and see Defendants' Vehicle in his rear-view mirror before the impact. *See* Mesh. Aff., Ex. 1 at 73:2-21.

**RESPONSE: Undisputed.**

19.     Levene and Husman's fellow employees who were travelling in a separate vehicle behind Defendants' Vehicle had to take the ditch in order to avoid hitting Defendants' Vehicle and needed to use a skid loader to pull themselves out. *See* Mesh. Aff., Ex. 1 at 81:11–82:10; *see also* Mesh. Aff., Ex. 2 at 61:10-24.

**RESPONSE: Admitted that the fellow employees ended up in the ditch after arriving on the crash scene. However, any testimony regarding the circumstances of the co-workers being forced to "take the ditch" is inadmissible hearsay offered by Defendants to prove that the co-workers were traveling immediately behind and presumably at the same speed as Defendant Schelhaas. This testimony was based**

5

on subsequent conversations with the co-workers at some undetermined time after the collision and constitutes inadmissible hearsay.

20.    Plaintiffs' Vehicle sustained minor damage in the accident:



*See* Mesh. Aff., Ex. 3.

> **RESPONSE: Disputed as to the characterization of the damage as "minor." Plaintiff Levene described the impact as "[a] hard impact," adding "[he] got hit hard." *See* Doc. No. 34-1 at 76:3-4. He was stationary at the moment of impact. *Id.* at 74:10-11. He turned the wheel and the impact pushed him off the right side of the roadway in slippery conditions. *Id.* at 75:16-19. The force of the impact buckled the bumper and left rear fender of Plaintiffs' vehicle.**



*See* **Doc. No. 34-3 at 1.**

21.     Levene testified that these photographs show the damage that was caused by the accident and Defendant Albertus Schelhaas ("Schelhaas") confirmed he took the photographs attached as Mesh. Aff., Ex. 3 on the day of the accident. *See* Mesh. Aff., Ex. 1 at 99:9-24; *see also* Mesh. Aff., Ex. 4 at 62:14–63:4.

**RESPONSE: Undisputed.**

## II.     Albertus Schelhaas's Employment with Staples Oil Co., Inc. and Recollection of the Accident.

22.     Defendant Albertus Schelhaas ("Schelhaas") was an employee of Defendant Staples Oil Co., Inc. ("Staples") and was acting within the course and scope of his employment at the time of the accident at issue. *See* Defs.' Answer at ¶ 17.

**RESPONSE: Undisputed.**

23.     Schelhaas obtained his commercial driver's license in 2014 after completing training through a vocational school. *See* Mesh. Aff., Ex 4 at 12:14–13:12.

**RESPONSE: Undisputed.**

24.     This training included classroom instruction, practical driving time, and tanker truck training. *Id.* at 13:13-25.

> **RESPONSE: Admitted that Defendant Schelhaas testified that his prior vocational training included classroom instruction and practical driving time. Defendant Schelhaas testified he was trained how to haul tanker trucks after completing the vocational program. *See* Doc. No. 34-4 at 4 (13:23-25). Defendant Schelhaas did not testify that this included hazardous weather condition training.**

25.     Eventually, Schelhaas obtained a HAZMAT endorsement. *Id.* at 14:1-2.

> **RESPONSE: Undisputed.**

26.     From 2014 to 2018 Schelhaas drove a tanker truck for a milk hauling company and he received additional training from this employer. *Id.* at 14:4-20.

> **RESPONSE: Admitted that Defendant Schelhaas testified that he received additional training from this prior employer; however, Defendants produced no documentation from this prior employer, including a verification of his prior Safety Performance History. *See* Doc. No. 35-1 at 15-16. Defendant Schelhaas did not testify that this included hazardous weather condition training.**

27.     Schelhaas began working for Staples in late July or August of 2018 until he resigned in June, 2019. *See* Mesh. Aff., Ex. 5 at 2.

> **RESPONSE: Disputed. According to records produced by Defendant Staples Oil, Defendant Schelhaas was hired on July 16, 2018, the same day he submitted his application, and started driving on July 23, 2018. *See* Doc. No. 35-1 at 4-8, 11-12 and 31.**

28.     Schelhaas received further training at Staples during his onboarding process that included instructional videos and written materials. *See* Mesh. Aff., Ex. 6 at 6–7.

**RESPONSE: Admitted that Defendant Schelhaas watched one-hour of hazardous materials videos and a rollover video on July 16, 2018, the same day he submitted his application. *See* Doc. No. 35-1 at 20-21. These are the only two training videos provided to new drivers. *See* Doc. No. 34-7 at 11 (44:11-16). The rollover video is the only training video relating to how to safely drive the tanker trucks. *Id.* at 12 (45:11-14). Defendant Staples Oil did not provide any training on driving in inclement weather. *Id.* at 27 (108:20-22). The so-called training and orientation program is not written anywhere. *Id.* at 20 (77:3-5). The only handouts provided is a copy of the drug and alcohol policy, the employee handbook and a copy of the FMCSR. *Id.* (78:11-19). No written policy or procedure governing speed in inclement weather. *Id.* at 28 (109:19-25). A jury question exists as to whether Defendant Staples Oil properly and adequately training Defendant Schelhaas.**

29.     Schelhaas testified that his orientation at Staples "covered a lot of ground" and included training on hazardous materials and preventing rollovers and spills. *See* Mesh. Aff., Ex. 4 at 36:12-24.

**RESPONSE: Admitted that Defendant Schelhaas watched one-hour of hazardous materials videos and a rollover video on July 16, 2018, the same day he submitted his application. *See* Doc. No. 35-1 at 20-21. Disputed that the orientation and limited training "covered a lot of ground". The orientation did not include any classroom instruction and/or any PowerPoint presentations. *See* Doc. No. 34-7 at 20 (78:6-10). These are the only two training videos provided to new drivers. *Id.* at**

9

**11 (44:11-16). The rollover video is the only training video relating to how to safely drive the tanker trucks. *Id*. at 12 (45:11-14). Defendant Staples Oil did not provide any training on driving in inclement weather. *Id*. at 27 (108:20-22). The so-called training and orientation program is not written anywhere. *Id*. at 20 (77:3-5). The only handouts provided is a copy of the drug and alcohol policy, the employee handbook and a copy of the FMCSR. *Id*. (78:11-19). No written policy or procedure governing speed in inclement weather. *Id*. at 28 (109:19-25). A jury question exists as to whether Defendant Staples Oil properly and adequately training Defendant Schelhaas.**

30.     Schelhaas also received ride along and supervised driving training shortly after he was hired. *See* Mesh. Aff., Ex. 6 at 6–7.

**RESPONSE: Disputed as to the characterization that the ride-along(s) constituted "supervised driving training," as it was nothing more than an informal process not governed by any written and standardized process and procedure. *See* Doc. No. 337-4 at 12 (46:3-12). There was no written training process. *Id*. There were no materials provided to the so-called trainers. *Id*. Defendants produced no documentation memorializing the so-called training Defendant Schelhaas received during the ride-along(s).**

*31.*     Peter Bartelt ("Bartelt") is the Director of Transportation at Staples. *See* Mesh. Aff., Ex. 7 at 10:20-25.

**RESPONSE: Undisputed.**

32.     Bartelt confirmed that Schelhaas received a driving and vehicle use policy, a distracted driving policy, and an employee handbook when he started working for Staples. *Id.* at

10

21:21–22:10.

> **RESPONSE: Admitted that Defendant Schelhaas acknowledged receipt of the Driving and Vehicle Usage Policy, which includes a distracted driving paragraph, and the Employee Handbook, on July 16, 2018, the same day he started working for Defendant Staples Oil.  *See* Doc. No. 35-1 at 5-7. The Employee Handbook is not a training manual and is void of any training materials.  *Id.* at 33-49.**

33.     Bartelt also confirmed that Staples verified Schelhaas's medical card, investigated his previous employment, and obtained a statement of previous violations for the past twelve months. *Id.* at 25:14–26:19.

> **RESPONSE: Admitted that Defendant Staples Oil obtained a copy of Defendant Schelhaas' medical card, faxed a request for the Prior Safety Performance History to a prior employer, and obtained his motor vehicle record.  Defendant Staples Oil never received a response from Defendant Schelhaas' prior employer regarding his Safety Performance History.  *See* Doc. No. 35-1 at 15-16.**

34.     Staples conducts annual MVR reviews. *Id.* at 26:23–27:24.

> **RESPONSE: Undisputed.**

35.     Schelhaas completed a road test, had a pre-employment drug test, and watched training videos related to hazardous materials and tanker rollovers. *Id.* at 29:12-13, 34:1–35:5, 43:2-8.

> **RESPONSE: Admitted that Defendant Schelhaas was required to pass a pre-employment drug test, and watched one-hour of hazardous materials videos and a rollover video on July 16, 2018, the same day he submitted his application. *See* Doc. No. 35-1 at 20-21.  Admitted that Defendant Schelhaas additionally completed a <u>2.4</u>**

**mile** road test on July 16, 2018. *Id* at 17.

36.     Staples is company with a small radius of operations of only 90-100 miles from its headquarters. *Id.* at 54:10-22.

**RESPONSE: Disputed as to the characterization of "small radius of operations." Defendant Staples Oil is a motor carrier operating in and affecting interstate commerce, and routinely operates in Minnesota, Iowa and South Dakota. *See* Doc. No. 34-7 at 14 (54:19-22).**

*37.*     Accordingly, Staples drivers rarely, if ever, are driving the hours of an over- the-road company. *Id.*

**RESPONSE: Disputed.  The citation does not support this vague contention.**

38.     Nevertheless, Staples does perform audits of its drivers' logs. *Id.* at 53:7-16.

**RESPONSE: Undisputed.**

39.     Staples' driver training and orientation program consists of the written materials, videos, road test, and ride along observations. *Id.* at 77:21–78:2.

**RESPONSE: Disputed for the reasons provided in Response to Nos. 28-30, 32 and 35.**

40.     Staples has admitted that it was the owner of the vehicle Schelhaas was operating at the time of the accident. *See* Mesh. Aff., Ex. 8 at 3–4.

**RESPONSE: Undisputed.**

41.     Schelhaas picked up his load in Luverne, Minnesota at 10:16 a.m. on the day of the accident with a destination of Sioux Falls, South Dakota. *See* Mesh. Aff., Ex. 7 at 85:20–86:24.

**RESPONSE: Admitted that Defendant Schelhaas picked up a load of ethanol in**

**Luverne, Minnesota, on the date of the crash; however, the time that he picked up the load is disputed. Defendant Staples Oil <u>assigned</u> the load to Defendant Schelhaas at 10:16 a.m. According to the bill of lading, however, the loading of 7,802 gallons of ethanol started at 12:01 p.m. and finished at 12:31 p.m.** *See* **Doc. No. 35-1 at 3. This is also consistent with Defendant Schelhaas daily log.** *Id.* **at 22.**

42.      Schelhaas testified that his start time on the day of accident was delayed due to weather. *See* Mesh. Aff., Ex 4 at 70:2-4.

**RESPONSE: Undisputed.**

43.      Once the storm passed, Schelhaas began his drive. *Id.* at 70:14-15.

**RESPONSE: Disputed as to the characterization that "the storm passed." As noted above, Defendant Schelhaas did not begin his trip until at least 12:31 p.m.** *See* **Doc. No. 35-1 at 3, 22. Defendant Staples Oil did not start their drivers that morning because they "…knew weather was coming."** *See* **Doc. No. 34-7 at 19 (75:18-19). The start of Defendant Schelhaas' day was delayed due to inclement weather.** *See* **Defendants' Material Fact No. 42 (above). As Defendants pointed out in Plaintiffs' respective deposition testimony, they were getting ready to cease work activity because of the worsening conditions.** *See* **Doc. No. 34-1 at 65:13-15 (confirming weather was "kind of bad"); Doc. No. 34-2 at 48:23 ("It was getting bad enough that we – they called it, so we were going to head in before it got too bad.");** *Id.* **at 54:18-23 (testifying that the conditions were "basically the same" from the time they left the rest area to the crash scene). The crash occurred at approximately 1:08 p.m., <u>approximately thirty-seven (37) minutes after Defendant Schelhaas began his drive</u>.** *See* **Doc. No. 34-4 at 13 (53:13-54:3). In their Answer, Defendants also**

13

admitted "[a]t the time of the wreck the road was icy and there was freezing rain, sleet, and/or hail." *See* Doc. No. 1 at ¶ 25; Doc. No. 9 at ¶ 20.  Defendant Schelhaas could not perform a post-crash drug test because the clinic closed early due to the inclement weather.  *See* Doc. No. 35-1 at 18.

44.    Schelhaas testified that the conditions at the time of accident involved packed snow, ice, slush, and general winter driving conditions. *See id.* at 42:21–43:8.

**RESPONSE: Disputed as to the characterization of "general" winter driving conditions.  Defendant Schelhaas testified there was ice on the ground, and he could see it.  *See* Doc. No. 34-4 at 11 (43:5-8); 51 (1-2).  In their Answer, Defendants also admitted "[a]t the time of the wreck the road was icy and there was freezing rain, sleet, and/or hail."  *See* Doc. No. 1 at ¶ 25; Doc. No. 9 at ¶ 20.**

45.    Schelhaas was travelling in the right lane of the interstate at the time of the accident. *Id.* at 58:4-7.

**RESPONSE: Undisputed.**

46.    Schelhaas explained that he did not see the stopped traffic until he reached the top of the hill to the east of the bridge. *Id.* at 58:10-24.

**RESPONSE: Undisputed.**

47.    Schelhaas testified that he applied the brakes once he reached the top of the hill. *Id.* at 58:25–59:5.

**RESPONSE: Admitted that he "stood on the brakes" after he crested the hill and observed the stopped traffic halfway down the hill.  *See* Doc. No. 34-4 at 15 (58:22-59:1).**

48.    Schelhaas described the hill as a "blind hill" that he could not see past until

reaching the top. *Id.* at 59:8-10.

**RESPONSE: Undisputed.  He further testified that a safe truck driver reduces his speed going up a blind hill in the event there are hazards on the other side.  *See* Doc. No. 34-4 at 15-16 (60:20-61:1).**

49.    Schelhaas testified that he could not avoid Plaintiffs' Vehicle by moving to the left because there were other vehicles passing him in the left lane. *Id.* at 61:8-18.

**RESPONSE: Undisputed.**

50.    Similarly, Schelhaas could not move to right because there was not enough room between the shoulder and the ditch and as a result he would have risked rolling his tanker, which was contrary to the training he received from Staples. *See id.* at 61:19–62:5.

**RESPONSE: Admitted that this was Defendant Schelhaas' testimony, but denied as to the veracity.  A screenshot from the cruiser video suggests there was sufficient room to do so.  *See* Doc. No. 35-1 at 50.**

51.    Schelhaas believed his only option was to apply the brake, sound the horn, and hope that his vehicle stopped in time or Plaintiffs' Vehicle noticed him coming and moved forward. *Id.* at 62:6-13.

**RESPONSE: Admitted that this was Defendant Schelhaas' testimony.**

**III.    Expert Reports**

52.    Both parties obtained reports from experts in the trucking industry.

**RESPONSE: Undisputed.**

53.    Plaintiffs produced a report from Adam Grill. *See* Mesh. Aff., Ex. 9.

**RESPONSE: Undisputed.**

54.    The majority of Grill's report consists of lengthy recitations of the FMCSR,

FMCSA, and other sources. See generally, id.

>**RESPONSE: Disputed regarding the characterization of Mr. Grill's report. It speaks for itself.** *See* **Doc. No. 34-9 at 1-34.**

55.     Grill's report provides the following "conclusions" with respect to Staples:

- Staples Oil is responsible for the actions of Defendant [Schelhaas] as it relates to the safe operation of a [commercial motor vehicle].
- Staples Oil is responsible to train and supervise to train and supervise their professional drivers; namely Defendant [Schelhaas].
- According to industry standards, this collision was preventable on the part of Staples Oil and Defendant [Schelhaas].

*Id.* at 33.

>**RESPONSE: Disputed regarding Defendants' attempts to view Mr. Grill's opinions and conclusions regarding Defendant Staples in a vacuum. The report must be read and understood in its entirety. For example, Mr. Grill concluded that Defendant Schelhaas failed to meet industry standards regarding his responsibility to operate the tractor-trailer with due caution when it comes to extreme weather conditions.** *See* **Doc. No. 34-9 at 33. Defendant Staples Oil was responsible to train and supervise Defendant Schelhaas.** *Id.*

56.     Grill's report also contains paragraphs labeled "opinion" sporadically placed throughout his report. *See id.* at 16–17, 20–22, 27–28.

>**RESPONSE: Disputed regarding the characterization of Mr. Grill's report. It speaks for itself and contains many opinions throughout the body of the report that are supported by facts and reference to the applicable regulations and guidelines.** *See* **Doc. No. 34-9 at 1-34.**

57.     Many of these "opinion" paragraphs contain general statements concerning Grill's opinion regarding best practices; however, he expresses the following opinions with

respect to Staples:

- Staples Oil is the one responsible for ensuring proper compliance with the Federal Motor Carrier Safety Regulations; including having a program in place for effectively training their drivers. Staples Oil failed to ensure that these requirements were effectively met, given that the nature of Defendant [Schelhaas's] driving could have been prevented through proper monitoring, training, and supervision as indicated throughout this report. (*Id.* at 16)
- A breakdown in training and communication processes utilizing the Safety Management Cycle can also be found in Bartelt's deposition transcript when he states that there is no safety training except for the hazmat training necessary every three years as stated above. Only verbal communication with drivers. (*Id.* at 17)

**RESPONSE: Disputed regarding the characterization of Mr. Grill's report and the opinions as "general statements."  Mr. Grill's report must be viewed in its entirety, not cherry-picked in a vacuum.  It contains supported opinions throughout the body of the report.  *See* Doc. No. 34-9 at 1-34.**

58.     Grill's report contains no opinion that Staples was negligent in maintaining the vehicle Schelhaas was driving at the time of the accident; no opinion that Staples was negligent in hiring Schelhaas; no opinion Staples knew or should have known that Schelhaas was an incompetent, reckless, or careless driver at any time prior to this accident; and no opinion that Staples knew, or unreasonably failed to discover, that the Schelhaas presented a risk of harm to others. *See generally, id.*

**RESPONSE: Plaintiffs no longer intend to pursue claims of negligent hiring, retention, entrustment and maintenance.  Disputed that he proffered no opinion that Staples knew or should have known that Schelhaas was an incompetent, reckless, or careless driver at any time prior to this accident; and that Staples knew, or unreasonably failed to discover, that he presented a risk of harm to others.  *See* Doc. No. 34-9 at 13-17, 21-28; *see also* Plaintiffs' Statement of Material Facts.**

59.     Defendants obtained a report from Annette Sandberg, a former Deputy

Administrator of the National Highway Traffic Safety Administration. *See* Mesh. Aff., Ex. 10.

      **RESPONSE: Undisputed.**

60.    Sandberg opined there were no maintenance-related issues with Defendants' vehicle that caused or contributed to this accident. *Id.* at ¶ 22.

      **RESPONSE: Plaintiffs no longer intend to pursue a claim of negligent maintenance. Further, this is the opinion of a retained expert, not a material fact.**

61.    Sandberg also concluded that it was reasonable for Staples to hire Schelhaas based upon his previous training, Staples' background investigation, and Schelhaas' four years of prior driving experience. *Id.* at ¶¶ 23–29.

      **RESPONSE: Plaintiffs no longer intend to pursue a claim of negligent hiring. Further, this is the opinion of a retained expert, not a material fact. Additionally, the evidence demonstrates that there were anomalies in Defendant Schelhaas' rushed hiring and orientation, and his retention after he backed into a legally parked vehicle during his initial appraisal period. *See* Plaintiffs' Statement of Material Facts at ¶¶ 1-54.**

62.    Sandberg concluded that Staples had a vetting, training, and orientation process that exceeded minimum requirements in the industry. *Id.* at ¶¶ 30–35.

      **RESPONSE: Disputed. This is the opinion of a retained expert, not a material fact. The evidence generates a genuine issue of material fact as to the adequacy of Defendant Staples Oil's vetting, training, and orientation process. *See* Plaintiffs' Statement of Material Facts at ¶¶ 1-54; *see also* Doc. No. 34-9 at 13-28.**

63.    Sandberg further concluded that Staples has a good process to review each incident or accident involving one of its drivers, including Schelhaas. *Id.* at ¶¶ 36–38.

**RESPONSE: Disputed.  This is the opinion of a retained expert, not a material fact. The evidence directly contradicts this opinion.  Despite having a policy in effect that required a preventability analysis following an accident or incident, Defendant Staples Oil failed to do so.  *See* Doc. No. 35-1 at 5; Plaintiffs' Statement of Material Facts at ¶¶ 49-52, 107-108; Doc. No. 34-7 at 13 (50:3-9) (50:24-51:1) (falsely testifying that no policy mandated a preventability analysis be completed); Doc. No. 34-9 at 28-30.**

64.    In Sandberg's opinion, Staples is a "very safe" trucking company and obtained the highest rating a motor carrier can receive after a compliance review was conducted after this accident. *Id.* at ¶¶ 42–44.

**RESPONSE: Disputed.  This is the opinion of a retained expert, not a material fact. Mr. Grill's report summarized numerous deficiencies in Defendant Staples Oil's operations.  *See* Doc. No. 34-9.**

65.    Sandberg provided the following conclusions at the end of her report:

All of these facts show that Staples properly qualified, supervised and retained Mr. Schelhaas as a commercial motor vehicle driver and entrusted him with the commercial motor vehicle he was driving on the day of this accident.

Staples was a safe motor carrier and took necessary steps to ensure their drivers operated in a safe manner.  These steps included careful screening, training and monitoring of their drivers and operations.

Staples had no reason to believe that this accident was likely to occur as Mr. Schelhaas was a qualified, safe and reliable driver.

The training provided by Staples and experience possessed by Mr. Schelhaas were more than enough to show Mr. Schelhaas was a well-qualified driver and could be entrusted to safely operate this commercial motor vehicle.

*Id.* at ¶¶ 45–48.

> **RESPONSE: Disputed.  This is the opinion of a retained expert, not a material fact.
> Mr. Grill's report summarized numerous deficiencies in Defendant Staples Oil's
> operations, and provided contrary conclusions, including that "…this collision was
> preventable on the part of Staples Oil and Defendant Schelhaas."  *See* Doc. No. 34-9
> at 33.**

## IV.    Plaintiffs' Complaint

66.    Plaintiffs' Complaint contains a claim for negligent hiring, training, entrustment,
retention, and maintenance against Staples. *See* Compl. at ¶¶ 36–50.

> **RESPONSE: The Complaint is not evidence and speaks for itself.  It additionally
> contains a claim for negligent supervision.  *See* Doc. No. 1 at ¶¶ 45-46.**

*67.*    Although these are separate legal theories, Plaintiffs pleaded them all together as
a single cause action. *Id.*

> **RESPONSE: The Complaint is not evidence and speaks for itself.**

68.    In any event, Plaintiffs claim that Staples was negligent in hiring Schelhaas,
failed to "conduct proper checks" on his background, and failed to exercise ordinary care to
determine his fitness as a driver. *Id.* at ¶¶ 37, 42–43.

> **RESPONSE: The Complaint is not evidence and speaks for itself.  Plaintiffs no
> longer intend to pursue a claim of negligent hiring.**

69.    Plaintiffs claim Staples was negligent in training Schelhaas regarding inspecting
his vehicle and proper driving. *Id.* at ¶¶ 38–39.

> **RESPONSE: The Complaint is not evidence and speaks for itself.  Reaffirmed that**

**Defendant Staples Oil failed to properly train Defendant Schelhaas to safety operate the tractor-trailer.**

70.     Plaintiffs claim Staples was negligent in entrusting the vehicle at issue to Schelhaas. *Id.* at ¶ 40.

**RESPONSE: The Complaint is not evidence and speaks for itself.  Plaintiffs no longer intend to pursue a claim of negligent entrustment.**

71.     Plaintiffs claim Staples failed to properly maintain the vehicle at issue. *Id.* at ¶ 44.

**RESPONSE: The Complaint is not evidence and speaks for itself.  Plaintiffs no longer intend to pursue a claim of negligent maintenance.**

72.     Finally, Plaintiffs claim that Staples failed to have certain policies, rules, and regulations in effect at the time of the accident, although it is not clear to which of the separate causes of actions these allegations relate. *Id.* at ¶¶ 45–46.

**RESPONSE: The Complaint is not evidence and speaks for itself.  These allegations relate to a claim of negligent supervision.**

73.     Count II of Plaintiffs' Complaint contains a cause of action for negligence against Schelhaas for his driving conduct. *Id.* at ¶¶ 51–61.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

74.     Count III of Plaintiffs' Complaint contains a cause of action for negligence *per se*, alleging that Staples and Schelhaas violated various statutes and federal regulations. *Id.* at ¶¶ 62–72.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

75.     Plaintiffs' Complaint alleges that Schelhaas violated several South Dakota

statutes, including SDCL §§ 32-18-26 and 49-28A. *Id.* at ¶ 63.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

76.     Plaintiffs also allege that both Schelhaas and Staples violated a number of federal regulations, but do not specify which regulations were allegedly violated by Schelhaas and which were allegedly violated by Staples. *Id.* at ¶¶ 67–68.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

77.     Rather, Plaintiffs allege that Staples and Schelhaas violated the following provisions of the FMCSA:

a.     49 C.F.R. § 173
b.     49 C.F.R. § 77.816(a)(3)
c.     49 C.F.R. § 383
d.     49 C.F.R. § 390
e.     49 C.F.R. § 390.11
f.     49 C.F.R. § 392
g.     49 C.F.R. § 392.14
h.     49 C.F.R. § 393
i.     49 C.F.R. § 395
j.     49 C.F.R. § 396

*Id.* at ¶ 68.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

78.     Count IV of Plaintiffs' Complaint contains a cause of action for *respondeat superior*, alleging that Staples is vicariously liable for the alleged negligence of Schelhaas. *Id.* at ¶¶ 73–74.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

79.     Count V of Plaintiffs' Complaint is titled "damages" and does not set out a separate cause of action; instead, it merely states the damages Plaintiffs are seeking in this action. *Id.* at ¶¶ 75–83.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

80.     Count V contains a claim for punitive damages against Defendants, alleging

willful, wanton, and/or intentional conduct on the part of Defendants. *Id.* at ¶¶ 81–83.

**RESPONSE: The Complaint is not evidence and speaks for itself.**

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants' Motion for

Partial Summary Judgment.

Respectfully submitted,

HOY TRIAL LAWYERS, PROF. L.L.C.

SCOTT G. HOY
901 West 10th St., Suite 300
Sioux Falls, SD 57104-3519
Ph: 605-334-8900
Fax: 605-338-1918
Email: scott@hoylaw.com

and

DANNY R. ELLIS, PRO HAC VICE
TRUCK WRECK JUSTICE, PLLC
1419 Market Street
Chattanooga, TN 37402
Ph: 423-265-2020
Fax: 423-265-2025
Email: danny@truckwreckjustice.com

**ATTORNEY FOR PLAINTIFFS ALEXANDER LEVENE AND DAVID HUSMAN**

23