IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALEXANDER LEVENE<br>and DAVID HUSMAN,<br><br>Plaintiffs,<br><br>V.<br><br>STAPLES OIL CO., INC., and<br>ALBERTUS SCHELHAAS,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 20:4171-KES<br><br>Judge Karen E. Schreier |

### PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, by and through counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(B), submit their Statement of Material Facts on which they contend there exists a genuine material issue to be tried in Opposition to Defendants' Motion for Partial Summary Judgment [Doc. No. 30]:[1]

**Defendant Staples Oil Conducted a Rushed Hiring and Orientation Process and Failed to Adequately Train Defendant Schelhaas.**

1.  Defendant Albertus Schelhaas ("Schelhaas") submitted a truck driver employment application to Defendant Staples Oil Co., Inc. ("Staples Oil") on July 16, 2018. *See* Doc. No. 35-1 at 11-12.

    **RESPONSE:**

---

[1] The facts recited herein are presented in the light most favorable to Plaintiffs and presented for purposes of summary judgment only. Plaintiffs do not intend any statement made herein to operate as an admission to be used for any purpose in this litigation. Plaintiffs similarly reserve the right to dispute any fact as stated herein as the litigation proceeds.

1

2. Defendant Schelhaas' employment application did not list any prior vocational training to be a truck driver. *Id.*

**RESPONSE:**

3. His only prior relevant experience was hauling milk from 2014 through 2018 for Van't Hof Milk Hauling. *Id.* at 12.

**RESPONSE:**

4. Defendant Schelhaas informed Defendant Staples Oil he was available to start on July 23, 2018. *Id.* at 11.

**RESPONSE:**

5. Defendant Staples Oil hired Defendant Schelhaas on July 16, 2018, the same day he submitted his employment application. *Id.* at 4-8, 11-12.

**RESPONSE:**

6. Defendant Schelhaas acknowledged receipt of the Anti-Discrimination Policy; Driving and Vehicle Usage Policy; Harassment Policy; and, Employee Handbook on July 16, 2018. *Id.* at 4-8.

**RESPONSE:**

7. The Employee Handbook is provided only to employees. *Id.* at 7, 33.

**RESPONSE:**

8. The Employee Handbook is focused on personnel-related issues, and is not a training manual. *Id.* at 33-49.

**RESPONSE:**

9. The Employee Handbook does not provide training on how to safely operate a commercial motor vehicle or how to comply with the FMCSR. *Id.*

2

**RESPONSE:**

10. The Employee Handbook does not provide any information or training regarding how to operate in hazardous weather conditions. *Id.*

**RESPONSE:**

11. Defendant Staples Oil hired Defendant Schelhaas before it attempted to contact his prior employer and investigate his prior performance operating commercial motor vehicles.[2] *Id.* at 11-12, 15-16.

**RESPONSE:**

12. Defendant Staples Oil faxed a form entitled Investigation Into Safety Performance History to Defendant Schelhaas' prior employer on July 16, 2018 and July 18, 2018, respectively, but received no response. *Id.*

**RESPONSE:**

13. Defendant Staples Oil never followed up with the prior employer after July 18, 2018; consequently, the prior employer did not report Defendant Schelhaas Safety Performance History to Defendant Staples Oil. *Id.* at 15-16.

**RESPONSE:**

14. As part of his orientation on July 16, 2018, Defendant Schelhaas received one-hour of hazardous material training, which included videos that covered the topics of "right to know…labeling requirements, security requirements, [and] general knowledge." *Id.* at 20; *see also* Doc. No. 34-7 at 11 (44:20-24).

**RESPONSE;**

15. The hazardous materials videos have nothing to do with how to operate a

---

[2] The regulations permit thirty days to perform this investigation.

3

commercial motor vehicle. *See* Doc. No. 34-7 at 12 (45:8-10).

**RESPONSE:**

16.     Defendant Schelhaas also watched a vehicle roll over training video on July 16, 2018. *See* Doc. No. 35-1 at 21; *see also* Doc. No. 34-7 at 11 (43:6-44:16).

**RESPONSE:**

17.     The vehicle roll over training video is the only video Defendant Staples Oil provided on how to safely operate a commercial motor vehicle. *See* Doc. No. 34-7 at 12 (45:8-14).

**RESPONSE:**

18.     Despite access to a catalog of J.J. Keller training videos through its insurance carrier, Federated Insurance, "[Defendant Staples Oil] chose to use the…hazardous materials [training] that were applicable to what [they] needed and…chose to use the tanker rollover one." *Id.* at 9 (34:1-36:11); 11 (43:2-5).

**RESPONSE:**

19.     These are the only two training videos Defendant Staples Oil shows to its truck drivers. *Id.* at 11 (44:11-16).

**RESPONSE:**

20.     Despite the availability of the training materials, Defendant Staples Oil "[did not] use it a lot" and Mr. Bartelt could only recall requesting training materials "probably twice" since 2018. *Id.* at 10 (38:15-39:13); 11 (42:8-9).

**RESPONSE:**

21.     Defendant Staples Oil did not provide any classroom instruction (i.e. PowerPoint presentations) to Defendant Schelhaas. *Id.* at 20 (78:6-10).

4

**RESPONSE:**

22. Aside from a few policies, the Employee Handbook and a copy of the FMCSR, Defendant Staples Oil did not provide any written handouts to Defendant Schelhaas. *Id.* (78:11-19).

**RESPONSE:**

23. Defendant Schelhaas completed a 2.4 mile road test on July 16, 2018 that purportedly covered thirty-seven (37) discrete areas of operation. *See* Doc. No. 35-1 at 17.

**RESPONSE:**

24. The areas of operation did not include operating a commercial motor vehicle in hazardous weather conditions. *Id.*

**RESPONSE:**

25. Although the Driver Road Test form required the examiner to grade the driver on the basis of "Excellent; Good; Fair: [and] Poor," Mr. Bartelt inserted only checkmarks, further marking the box that Defendant Schelhaas "PASSED." *Id.*

**RESPONSE:**

26. Defendants contend that Defendant Schelhaas participated in two to three weeks of ride-along(s) with other drivers; however, a mileage sheet for the week of July 23-27, 2018, produced in discovery, documents that Defendant Schelhaas started driving an Edgerton to Windom route on Monday, July 23, 2018. *See* Doc. No. 34-7 at 12 (45:24-46:2); *see also* Doc. No. 35-1 at 31.

**RESPONSE:**

27. There are no written materials documenting that Defendant Schelhaas participated in, and completed, two to three weeks of ride-along(s) with other drivers. *See* Doc.

5

No. 34-7 at 12 (47:14-19).

**RESPONSE:**

28. There was no written training process for the drivers that participated in the ride-along(s) with Defendant Schelhaas. *Id.* (46:3-7).

**RESPONSE:**

29. There were no training materials in place to train or instruct the drivers that participated in the ride-along(s) with Defendant Schelhaas. *Id.* (46:8-12).

**RESPONSE:**

30. There was no checklist of skills that the drivers were required to observe and ensure Defendant Schelhaas could perform during the ride-along(s). *Id.* (47:4-7) ("We don't have checklists.").

**RESPONSE:**

31. Defendant Staples Oil did not have a Safety Handbook. *Id.* at 31 (122:20-22).

**RESPONSE:**

32. Defendant Staples Oil did not maintain a safety budget. *Id.* (122:23-24).

**RESPONSE:**

33. Defendant Staples Oil did not "push out" safety-related information to its drivers. *Id.* (122:25-123:6).

**RESPONSE:**

34. Defendant Staples Oil holds safety meetings once every three years to comply with hazmat requirements. *Id.* (123:7-10).

**RESPONSE:**

35. Defendant Staples Oil provided no training to Defendant Schelhaas on driving in

6

inclement weather conditions. *Id.* at 27-28 (108:20-109:25).

**RESPONSE:**

36. Defendant Staples Oil provided no training to Defendant Schelhaas on how to drive in snow and ice. *Id.* at 28 (109:12-13).

**RESPONSE:**

**Defendant Staples Oil Failed to Follow and Enforce its Own Policies and Procedures by Not Discharging Defendant Schelhaas When he Backed Into a Legally Parked Vehicle During His Initial Appraisal Period.**

37. According to the Safety Handbook, Defendant Staples Oil hired Defendant Schelhaas subject to a ninety (90) day initial appraisal period. *See* Doc. No. 35-1 at 37.

**RESPONSE:**

38. During this period, Defendant Schelhaas' supervisor was required to assess his performance and work habits monthly. *Id.*

**RESPONSE:**

39. Pursuant to the policy, at the end of the ninety (90) day period, Defendant Schelhaas was to receive "a <u>formal</u> performance appraisal." *Id.* (emphasis added).

**RESPONSE:**

40. Additionally, upon completion of the ninety (90) day period, Defendant Schelhaas' status was to be reviewed for continued employment. *Id.*

**RESPONSE:**

41. Defendants did not assess his performance and work habits monthly or perform a "formal performance appraisal" for Defendant Schelhaas, as no such documents were produced in discovery.

**RESPONSE:**

7

42. On October 3, 2018, during the ninety (90) day appraisal period, Defendant Schelhaas backed into a legally parked vehicle. *Id.* at 1.

**RESPONSE:**

43. During its 2.4 mile road test on July 26, 2018, Defendant Staples Oil had deemed Defendant Schelhaas proficient in this area. *Id.* at 17.

**RESPONSE:**

44. Defendant Staples Oil issued Defendant Schelhaas a *Letter of Warning*, which "…serve[d] to express dissatisfaction for [the] incident…." *Id.* at 1; *see also* Doc. No. 34-4 at 5 (17:14-18:1).

**RESPONSE:**

45. Defendant Schelhaas testified he could not recall receiving any training on "Get Out And Look" (GOAL). *See* Doc. No. 34-4 at 5 (18:2-6).

**RESPONSE:**

46. If Defendant Staples Oil, or any prior employer, had provided that training, Defendant Schelhaas would have followed it. *Id.* (18:7-14).

**RESPONSE:**

47. Defendant Staples Oil counseled Defendant Schelhaas about the incident, but did not provide any additional training to him. *Id.* (18:19-19:5); *see also* Doc. No. 34-7 at 27 (106:18-107:9).

**RESPONSE:**

48. Defendant Staples Oil did not terminate Defendant Schelhaas for this incident even though it occurred during the ninety (90) day initial appraisal period when he was subject to termination even if his performance was satisfactory. *See* Doc. No. 35-1 at 37.

**RESPONSE:**

49. Defendant Staples Oil's Driving and Vehicle Usage Policy advises "[a]ll accidents will be reviewed and a determination made as either preventable or non-preventable." *Id.* at 5.

**RESPONSE:**

50. The policy defines a "preventable accident" as "…an accident in which the driver failed to do everything reasonably possible to avoid it." *Id.*

**RESPONSE:**

51. Defendant Staples Oil did not perform a preventability analysis for this accident. *See* Doc. No. 34-7 at 13 (49:25-50:2).

**RESPONSE:**

52. After representing that "[i]t depends on the situation," Defendant Staples Oil falsely testified there is no written policy requiring that a preventability analysis be done. *Id.* (50:3-9) (50:24-61:1).

**RESPONSE:**

53. During a truck inspection on December 5, 2018, Defendant Schelhaas was additionally cited for failing to maintain proper road clearance due to a hanging supply hose. *See* Doc. No. 35-1 at 30.

**RESPONSE:**

54. Defendant Schelhaas acknowledged that this was an issue that could have been detected in a pre-trip inspection. *See* Doc. No. 34-4 at 6 (23:12-20).

**RESPONSE:**

### The Federal Motor Carrier Safety Regulations ("FMCSR") and Minnesota Commercial Driver's Manual Govern the Safe Operation of a Tractor-Trailer in Hazardous Weather Conditions.

55. Defendant Staples Oil acknowledges that the FMCSR are the minimum industry standards for motor carriers and truck drivers. *See* Doc. No. 34-7 at 19 (74:17-25).

**RESPONSE:**

56. Defendant Schelhaas similarly acknowledges he was required to comply with the FMCSR. *See* Doc. No. 34-4 at 7 (25:14-18; 26:21-23).

**RESPONSE:**

57. Defendant Schelhaas further acknowledged that the Minnesota Commercial Driver's Manual ("CDM") contains the rules that a truck driver must follow to safely operate a commercial motor vehicle. *Id.* (27:10-28:8); *see also* Exhibit 35-2 [Selected Excerpts of CDM] at 1-8.

**RESPONSE:**

58. Defendant Schelhaas studied the CDM before taking his commercial driver's license test. *Id.* (27:12-15).

**RESPONSE:**

59. He agreed that the safety rules were the minimum standards that a truck driver must follow. *Id.* (28:19-23).

**RESPONSE:**

60. Defendant Schelhaas agreed that failing to comply with the safety rules can result in truck crashes involving broken bones, quadriplegia, back injuries, neck injuries, and death. *Id.* at 8 (30:5-31:17).

**RESPONSE:**

61. He agreed that the safety rules require looking 12 to 15 seconds ahead. *Id.* (31:21-32:2); *see also* Exhibit 35-2 at 2.

**RESPONSE:**

62. He agreed that a safe truck driver must anticipate and prepare for road hazards and adjust their speed accordingly. *Id.* at 8-9 (32:22-34:3).

**RESPONSE:**

63. He agreed that the most important space for a truck driver is the space he/she is driving into. *Id.* at 9 (34:7-25); *see also* Doc. No. 35-2 at 6.

**RESPONSE:**

64. Defendant Schelhaas agreed that driving too fast for conditions is also a major cause of tractor-trailer crashes. *Id.* (35:5-8); *see also* Doc. No. 35-2 at 4 ("Driving too fast is a major cause of fatal crashes.").

**RESPONSE:**

65. He agreed that a faster speed requires a longer stopping distance. *Id.* (35:13-15).

**RESPONSE:**

66. He agreed that weather and road conditions impact stopping distance. *Id.* (35:16-25).

**RESPONSE:**

67. He agreed that it takes longer to stop on slippery surfaces. *Id.* at 10 (38:5-11).

**RESPONSE:**

68. Defendant Schelhaas agreed that the Section 2.6.2 of the CDL required him to reduce his speed by one-third on a wet road; one-half on a snow-packed road; and, reduce his speed to a crawl and stop driving as soon as you can safely do so if the surface is icy:

11

> **2.6.2 – *Matching Speed to the Road Surface***
>
> You can't steer or brake a vehicle unless you have traction. Traction is friction between the tires and the road. There are some road conditions that reduce traction and call for lower speeds.
>
> **Slippery Surfaces.** It will take longer to stop, and it will be harder to turn without skidding, when the road is slippery. Wet roads can double stopping distance. You must drive slower to be able to stop in the same distance as on a dry road.
>
> Reduce speed by about one-third (e.g., slow from 55 to about 35 mph) on a wet road. On packed snow, reduce speed by a half, or more. If the surface is icy, reduce speed to a crawl and stop driving as soon as you can safely do so.

*Id.* at 12-13 (48:10-49:15); *see also* Doc. No. 35-2 at 4-5.

**RESPONSE:**

69. Defendant Schelhaas acknowledged that he was required to comply with the FMCSR provision mandating extreme caution in hazardous conditions:

> **§392.14 Hazardous conditions; extreme caution.**
> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured.
> [33 FR 19732, Dec. 25, 1968, as amended at 60 FR 38747, July 28, 1995]

*Id.* at 10 (38:12-40:17) (discussing 49 C.F.R. § 392.14).

**RESPONSE:**

70. Defendant Schelhaas admitted that the failure to reduce his speed as directed by the CDM can result in accidents and injuries. *Id.* at 13 (51:5-52:2).

RESPONSE:

**Monitoring the Weather and Road Conditions at Defendant Staples Oil Was Everyone's Responsibility.**

71. Mr. Bartelt testified that everybody from the drivers, the transportation manager, and himself are responsible for monitoring weather conditions. *See* Doc. No. 34-7 at 17 (67:7-11).

RESPONSE:

72. Defendant Staples Oil does not provide formal training on operating in hazardous weather conditions because they "generally shut down" when it occurs:

```
1    Q    But nothing – the drivers don't watch any videos or have
2         any training about inclement weather?
3    A    No. We generally shut down if the weather is bad and
4         wait until it's better before we go again.
```

*Id.* at 28 (109:1-4).

RESPONSE:

73. Defendant Staples Oil believes "there is no load…that's worth having weather problems; [adding] **so when there is weather, we stay home and wait for the roads to get cleared up before we go.**" *Id.* at 17 (66:21-25) (emphasis added).

RESPONSE:

74. Defendant Staples Oil uses 511 South Dakota to monitor the weather and road conditions. *Id.* (66:25).

RESPONSE:

75. Defendant Staples Oil regularly communicates with its drivers throughout the workday. *Id.* at 14 (54:2-4); 15 (57:18-19).

RESPONSE:

13

### Defendant Staples Oil Assigned a Load to Defendant Schelhaas Knowing it Would Require Him to Drive in Hazardous Weather Conditions in Violation of the FMCSR and CDM.

76. Defendants Staples Oil and Schelhaas discussed the weather conditions the morning of the crash. *See* Doc. No. 34-4 at 18 (70:2-6).

**RESPONSE:**

77. Defendant Schelhaas' start time was delayed due to the "previous [inclement] weather." *Id.* (70:7-9).

**RESPONSE:**

78. Defendant Staples Oil did not start their drivers the morning of the crash because they "...knew there was weather coming." *See* Doc. No. 34-7 at 19 (75:18-19).

**RESPONSE:**

79. The weather remained poor all day, as Defendant Schelhaas was unable to obtain a post-crash drug test in Sioux Falls, South Dakota due to the clinic closing early at 4:00 p.m. *See* Doc. No. 35-1 at 18.

**RESPONSE:**

80. Despite the existence of "previous weather" and "[knowing] there was weather coming," Defendant Staples Oil assigned a load of 7,800 gallons of ethanol to Defendant Schelhaas at 10:16 a.m. *Id.* at 3, 27-29; *see also* Doc. No. 34-7 at 22 (85:19-23).

**RESPONSE:**

81. Defendant Schelhaas was paid by the trip, not the mile, meaning the more loads he completed in a day, the more money he made. *See* Doc. No. 34-7 at 15 (57:10-16).

**RESPONSE:**

82. According to his driver log, Defendant Schelhaas conducted a pre-trip inspection

14

of the tractor-trailer at 10:09 a.m. *See* Doc. 35-1 at 22.

**RESPONSE:**

83.  At 10:29 a.m., Defendant Schelhaas drove a distance of approximately 23 miles in 32 minutes from his residence to the Agri-Energy terminal in Luverne, Minnesota. *Id.* at 3, 22.

**RESPONSE:**

84.  Agri-Energy loaded 7,802 gross gallons of ethanol into the tanker truck from 12:01 p.m. to 12:31 p.m. *Id.* at 3.

**RESPONSE:**

85.  Fully loaded, the tractor-trailer operated by Defendant Schelhaas weighed 78,000 pounds. *See* Doc. No. 34-4 at 17 (65:11-14).

**RESPONSE:**

86.  Defendant Schelhaas was "on duty" at the Agri-Energy terminal from 11:01 a.m. to 12:32 p.m. *See* Doc. No. 35-1 at 22.

**RESPONSE:**

87.  Defendant Schelhaas started his trip from Luverne, Minnesota to the Sioux Falls, South Dakota destination at 12:32 p.m. *Id.*

**RESPONSE:**

88.  At about the same time Defendant Schelhaas was preparing to depart the Agri-Energy terminal in Luverne, Minnesota, Plaintiffs were preparing to end work for the day due to hazardous weather conditions at a rest area on the South Dakota border with Minnesota. *See* Doc. No. 34-1 at 65:2-19; 34-2 at 48:23 ("It was getting bad enough that we – they called it, so we were going to head in before it got too bad.")

15

**RESPONSE:**

89. At the time of the wreck, approximately thirty-six (36) minutes after departing the Agri-Energy terminal, "the road was icy and there was freezing rain, sleet, and/or hail." *See* Doc. No. 1 at ¶ 25 (emphasis added); Doc. No. 9 at ¶ 20 (admitting allegation in Complaint); *see also* Doc. No. 35-1 at 22 (change of status from driving to on-duty at 1:08 p.m.).

**RESPONSE:**

90. Defendant Schelhaas described the weather conditions as "[s]now-packed, ice, slush." *See* Doc. No. 34-4 at 11 (42:18-23).

**RESPONSE:**

91. Defendant Schelhaas testified there was snow and ice on the roadway. *Id.* (43:1-6).

**RESPONSE:**

92. Defendant Schelhaas observed ice on the roadway. *Id.* at 12 (46:25-47:3).

**RESPONSE:**

93. Defendant Schelhaas could have safely discontinued operation of the tractor-trailer by exiting the highway or stopping at a truck stop. *Id.* at 14 (56:7-20).

**RESPONSE:**

94. In his deposition testimony, Defendant Schelhaas estimated he was traveling "between 40 and 45 [mph]" before the collision. *Id.* at 14 (55:19-20).

**RESPONSE:**

95. Despite the presence of ice on the roadways, Defendant Schelhaas agreed that he did not reduce his speed to a crawl as required by the CDM:

16

> :d 10/24/22   Page 13 of 25 PageID #: 801    51
> 1  Q   Was the surfaces icy on December 27, 2018?
> 2  A   Yes.
> 3  Q   Did you slow your speed to a crawl?
> 4  A   No.

*Id.* at 13 (50:16-51:4).

**RESPONSE:**

96. The tractor-trailer operated by Defendant Schelhaas was equipped with Pedigree Technologies OneView telematics software that transmitted, in real-time, the GPS location and speed of the tractor trailer to Defendant Staples Oil. *See* Doc. No. 34-7 at 17 (65:23-66:7); *see also* Doc. No. 35-1 at 25-26.

**RESPONSE:**

97. According to the Pedigree Technologies OneView data, Defendant Schelhaas was traveling at 57 mph at approximately 1:07 p.m., before dropping to 0 mph at 1:08 p.m. at the time of the collision. *See* Doc. No. 34-4 at 14 (53:17-54:14); *see also* Doc. No. 35-1 at 26.

**RESPONSE:**

98. Defendant Staples Oil agreed that the Pedigree Technologies OneView data documented Defendant Schelhaas' approximate speeds before the wreck. *See* Doc. No. 34-7 at 17 (67:16-25).

**RESPONSE:**

99. The rear-end collision with Plaintiffs occurred on a downhill slope after Defendant Schelhaas crested a "blind hill." *See* Doc. No. 34-4 at 15 (58:11-59:10).

**RESPONSE:**

100. Absent the hazardous weather conditions, Defendant Schelhaas agreed a safe truck driver should reduce his speed before cresting a blind hill in the event of a hazard on the

other side. *Id.* at 15-16 (60:20-61:1).

**RESPONSE:**

101. A South Dakota Highway Patrol Officer arrived on scene at approximately 1:10 p.m., approximately one minute after the collision, as depicted in a screenshot from the cruiser video. *See* Doc. No. 35-1 at 50.

**RESPONSE:**

102. After investigating the crash, the Officer cited Defendant Schelhaas for Driving Too Fast for Conditions. *See* Doc. No. 34-4 at 16 (64:1-4).

**RESPONSE:**

103. Defendant Schelhaas did not contest the ticket and paid a fine. *Id.* (64:10-17).

**RESPONSE:**

104. At no time on December 27, 2018 did Defendant Staples Oil inform Defendant Schelhaas that he was driving too fast for the conditions. *Id.* at 18 (70:20-24).

**RESPONSE:**

105. Defendant Staples Oil issued Defendant Schelhaas his *Second Letter of Warning* with the following supervisor comments:

> Supervisor Comments:
> On 12/27/2018 Al was involved an accident on Westbound I-90 just before the Brandon, SD exit. Weather was poor with rain/snow mix and the roads were sloppy. A pick up truck travelling in front of Al came to a stop has he approached a snow plow and Al was not able to stop in time and hit the pick up truck in the rear. Al was cited for driving too fast in the road conditions.
>
> Al and I discussed the importance of maintain a safe following distance as dictated by the road conditions.
>
> I have discussed the situation described above with my direct supervisor and am fully aware of Staples Oil Company's Policy concerning this issue. I understand that I am free to return to work at this time. I also understand that if I continue to violate this policy **that I will be dismissed at** that time
>
> _____         _____
> Direct Supervisor of Employee      Employee Signature

*See* Doc. No. 35-1 at 2.

**RESPONSE:**

106. Defendant Staples Oil did not require Defendant Schelhaas to perform any remedial training as a result of this collision. *See* Doc. No. 34-7 at 27 (108:5-19).

**RESPONSE:**

107. Defendant Staples Oil did not perform a preventability analysis for this collision. *See* Doc. No. 34-7 at 13 (49:25-50:2).

**RESPONSE:**

108. After representing that "[when it performs a preventability analysis] depends on the situation," Mr. Bartelt mistakenly testified Defendant Staples Oil has no written policy requiring that a preventability analysis be done. *Id.* (50:3-9) (50:24-51:1).

**RESPONSE:**

Respectfully submitted,

HOY TRIAL LAWYERS, PROF. L.L.C.

_____
SCOTT G. HOY
901 West 10th St., Suite 300
Sioux Falls, SD 57104-3519
Ph: 605-334-8900
Fax: 605-338-1918
Email: scott@hoylaw.com

and

DANNY R. ELLIS, PRO HAC VICE
TRUCK WRECK JUSTICE, PLLC
1419 Market Street
Chattanooga, TN 37402
Ph: 423-265-2020
Fax: 423-265-2025
Email: danny@truckwreckjustice.com

**ATTORNEY FOR PLAINTIFFS ALEXANDER LEVENE AND DAVID HUSMAN**